UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMMODITIES & MINERALS ENTERPRISE LTD.,#<br><br>        Plaintiff,<br><br>  v.<br><br>CVG FERROMINERA ORINOCO, C.A.,<br><br>        Defendants. | 16 Civ. 861 (ALC) |

**PLAINTIFF COMMODITIES & MINERALS ENTERPRISE LTD.'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
TO LIFT THE STAY AND TRANSFER FUNDS INTO ESCROW
PURSUANT TO A JUDGMENT OF A UNITED STATES DISTRICT COURT**

## TABLE OF CONTENTS

Table of Authorities ............................................................................................................... ii

Preliminary Statement ............................................................................................................ 1

STATEMENT OF FACTS ................................................................................................... 1

ARGUMENT ........................................................................................................................ 5

I.     The Account Is Subject To A Turnover Order Pursuant To The Florida Judgment ................................................................................................................... 5

II.    A Turnover Order Is Consistent With The FSIA .......................................................... 6

    A.    The Account Is Subject To Attachment Pursuant To 28 U.S.C. § 1610(d) ......... 7

        1.    The Account Is Located In The U.S. And Used By FMO For Commercial Activity .................................................................................. 7

        2.    FMO Waived Immunity From Prejudgment Attachment In The TSMC ........................................................................................................ 9

        3.    The Purpose Of The Attachment Is To Secure CME's Eventual Judgment ................................................................................................... 11

    B.    The Account Is Subject To Attachment Pursuant To 28 U.S.C. § 1610(a)(6) ....... 13

    C.    FMO Also Waived Immunity In Moving To Vacate The Partial Final Award ..... 14

    D.    A "Reasonable Amount Of Time Has Elapsed" Since FMO Received Notice Of The Florida Judgment ......................................................................... 14

CONCLUSION ................................................................................................................... 15

## TABLE OF AUTHORITIES

### CASES

*Banco de Seguros del Estado v. Mut. Marine Office, Inc.*,
   344 F.3d 255 (2d Cir. 2003) .......................................................................................... 9, 11

*CSX Transp., Inc. v. Island Rail Terminal, Inc.*,
   879 F.3d 462 (2d Cir. 2018) .................................................................................................. 5

*Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*,
   2017 U.S. Dist. LEXIS 221611 (D.D.C. June 9, 2017) .................................................. 14, 15

*EM Ltd. v. Republic of Argentina*,
   473 F.3d 463 (2d Cir. 2007) .................................................................................................. 8

*Ferrostaal Metals v. S.S. Lash Pacifico*,
   652 F. Supp. 420 (S.D.N.Y. 1987) ...................................................................................... 15

*Gadsby & Hannah v. Socialist Republic of Romania*,
   698 F. Supp. 483 (S.D.N.Y. 1988) ...................................................................................... 15

*Gold Reserve Inc. v. Bolivarian Republic of Venezuela*,
   14-cv-2014 (D.D.C. Jan. 20, 2016) ..................................................................................... 15

*HBE Leasing Corp. v. Frank*,
   48 F.3d 623 (2d Cir. 1995) .................................................................................................... 6

*Hoenlein v. Kaplan*,
   2005 N.Y. Misc. LEXIS 3508 (Sup. Ct. N.Y. Cty. Oct. 31, 2005) ................................... 5, 6

*Int'l Ins. Co. v. Caja Nacional De Ahorro Y Seguro*,
   293 F.3d 392 (7th Cir. 2002) ............................................................................................... 14

*Libancell S.A.L. v. The Republic of Lebanon*,
   2006 U.S. Dist. LEXIS 29442 (S.D.N.Y. May 16, 2006) ............................................. 13, 14

*NML Capital, Ltd. v. Republic of Argentina*,
   680 F.3d 254 (2d Cir. 2010) ............................................................................................. 7, 8

*Ned Chartering & Trading, Inc. v. Republic of Pakistan*,
   130 F. Supp. 2d 64 (D.D.C. 2001) ...................................................................................... 15

*Nehring v. S.S. M/V POINT VAIL*,
   901 F.2d 1044 (11th Cir. 1990) ........................................................................................... 11

*Peterson v. Republic of Iran*,
  2013 U.S. Dist. LEXIS 40470 (S.D.N.Y. Mar. 13, 2013) ................................................... 15

*Matter of Signature Bank, N.A. v. HSBC Bank USA, N.A.*,
  67 A.D.3d 917 (2d Dep't 2009) ............................................................................................. 6

*State v. Lincoln Sav. Bank*,
  210 A.D.2d 489 (2d Dep't 1994) ........................................................................................... 6

*S & S Mach. Co. v. Masinexportimport*,
  706 F.2d 411 (2d Cir. 1983) ............................................................................................. 9, 10

*Seawind Compania, S.A. v. Crescent Line, Inc.*,
  320 F.2d 580 (2d Cir 1963) ................................................................................................. 11

*Solgas Energy Ltd. v. Fed. Gov. Nig.*,
  2010 U.S. Dist. LEXIS 72326 (S.D. Tex. July 19, 2010) .................................................... 13

*Swift & Co. Packers v. Compania Columbiana del Caribe, S.A.*,
  339 U.S. 684 (1950) ............................................................................................................ 11

*Venus Lines Agency v. CVG Indus. Venezolana de Aluminio, CA*,
  210 F.3d 1309 (11th Cir. 2000) ..................................................................................... 11, 12

*Yasuda Fire & Marine Ins. Co. v. Cont'l Cas. Co.*,
  37 F.3d 345 (7th Cir. 1994) ................................................................................................. 10

## STATUTES

9 U.S.C. § 201 ............................................................................................................................ 3, 13

28 U.S.C. § 1603 ............................................................................................................................. 7

28 U.S.C. § 1610 .................................................................................................................... *passim*

Fed. R. Civ. P. 69 ....................................................................................................................... 5, 15

Fed. R. Civ. P. Supp. R. B ....................................................................................................... *passim*

N.Y. CPLR 105 ............................................................................................................................... 5

N.Y. CPLR 5225 ....................................................................................................................... 5, 15

Plaintiff Commodities & Minerals Enterprise Ltd. ("CME"), by and through its attorneys, respectfully submits this Memorandum of Law in Support of its Motion to Lift the Stay and Direct the Transfer of Funds into Escrow Pursuant to a Judgment of a United States District Court.

## Preliminary Statement

On July 18, 2018, the United States District Court for the Southern District of Florida confirmed a partial final arbitration award directing defendant CVG Ferrominera C.A. ("FMO") to post $62,730,279.98 into an escrow account as pre-award security for CME's claims in an ongoing arbitration against FMO. FMO has yet to pay a single dollar of this amount. To satisfy this outstanding judgment – which is now registered in this District – CME seeks the turnover of nearly $8 million in funds attached in this action at FMO's New York bank account.

There can be no dispute that the judgment of the United States District Court for the Southern District of Florida constitutes a final judgment requiring FMO to post security for CME's claims in arbitration. Nor is there any dispute that the funds in FMO's New York bank account are the property of FMO. Thus, the only question that this Court must consider is whether a turnover order would be consistent with any limitations imposed by the Foreign Sovereign Immunities Act ("FSIA"). As set forth in further detail below, there are three separate and independent exceptions to any immunity from pre-judgment attachment otherwise afforded to FMO's assets, and a reasonable amount of time has elapsed since FMO received notice of the Florida court's decision. For these reasons, as discussed below, the motion should be granted.

## STATEMENT OF FACTS

CME commenced this action on February 4, 2016, seeking a maritime attachment in aid of maritime arbitration pursuant to Rule B of the Supplemental Rules for Admiralty or

Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure ("Rule B") and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "FAA"). *See* Declaration of Bruce G. Paulsen dated December 21, 2018 ("Paulsen Decl.") ¶ 1. CME sought to attach FMO's assets in this District up to the amount of CME's claims against FMO for the breach of various maritime contracts, including the parties' Transfer System Management Contract dated August 7, 2010 (the "TSMC"). *Id.* Pursuant to this Court's order of attachment, FMO's New York bank account with garnishee Bank of America, N.A. (the "Account"), containing approximately $7.8 million (a small portion of the amounts ultimately sought by CME), was attached. *Id.* ¶ 2.

On June 13, 2016, FMO moved to dismiss CME's verified complaint or to vacate the order of attachment, arguing, among other things, that it is an agency or instrumentality of the Venezuelan government under the FSIA and, as such, its property (including the Account) is immune from attachment. *See* ECF No. 38; ECF No. 39 at 16-20. On September 29, 2016, the Court issued a short-form order stating that "[f]or reasons that will be set forth in an upcoming memorandum opinion, the Court finds that Defendant is an agency or instrumentality of a foreign state," but directed CME to submit a letter motion setting forth any exception to the FSIA that might apply. ECF No. 83.

By letter dated October 18, 2016, CME submitted its letter motion, detailing why the Account is not immune from attachment under the FSIA pursuant to the exception set forth in 28 U.S.C. § 1610(d). ECF No. 84. Specifically, CME established that (i) FMO's funds are located in the U.S. and used by FMO in the U.S. for commercial activity; (ii) FMO explicitly waived immunity from prejudgment attachment in its contracts with CME; and (iii) the purpose of the attachment in this proceeding was to secure CME's eventual judgment, and not to obtain

2

jurisdiction over FMO. *Id.* In the approximately three months that followed prior to the stay of this proceeding, FMO never responded to CME's letter.

On January 5, 2017, the arbitration panel in the underlying arbitration between CME and FMO arising out of the TSMC (the "TSMC Arbitration") entered a partial final award. *See* Paulsen Decl. Ex. B (the "Partial Final Award"). As set forth in further detail therein, the panel granted CME's motion for partial pre-award security under the TSMC in part, and ordered FMO "to make a deposit in the amount of $62,730,279.98 in an escrow account to be established by the parties and held by a first-class New York bank which shall act as escrow agent and must irrevocably agree to abide by the orders of the Panel or the United States District Court for the Southern District of New York concerning payment of the funds so held." *See id.* ¶ 72.

By letter dated January 16, 2017, CME advised the Court of the issuance of the Partial Final Award, and requested a temporary stay of any decision on FMO's pending motion. ECF No. 86. As stated in its letter, CME was preparing to file a petition to confirm and enforce the Partial Final Award, which, if granted, would provide an additional exception to any immunity from pre-judgment attachment under the FSIA. *See id.* at 3 (citing 28 U.S.C. § 1610(a)(6)). In addition, CME noted that if FMO were to challenge CME's petition to confirm and enforce the Partial Final Award, a third exception to immunity would apply under Article VI of the New York Convention.[1] *See id.* at 4. FMO did not oppose CME's request for a stay, *see* ECF No. 94, which was granted by the Court on April 4, 2017. ECF No. 95.

---

[1] The "New York Convention" refers to The Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, as implemented by Chapter Two of the FAA, 9 U.S.C. §§ 201 *et seq.*

Thereafter, CME filed its petition to confirm and enforce the Partial Final Award in the Southern District of Florida,[2] and as anticipated, FMO moved to vacate the Partial Final Award. *See* ECF No. 105 (parties' joint status report).

On July 18, 2018, the Florida district court ordered and adjudged that CME's motion should be granted, and confirmed the Partial Final Award. *See* Paulsen Decl. Ex. C (the "Florida Judgment"). The Court also denied FMO's motion to vacate same. *Id.* Although FMO initially appealed the Florida Judgment to the Eleventh Circuit Court of Appeals, FMO did not seek a stay pending appeal. *Id.* ¶ 6. FMO subsequently abandoned its appellate rights in moving to voluntarily withdraw its appeal, which was granted on October 25, 2018. *Id.* Ex. D.

On November 7, 2018, CME registered the Florida Judgment in this District, by commencing a miscellaneous action with the filing of a copy of the Florida Judgment, certified by the Clerk of the United States District Court for the Southern District of Florida. *See* Paulsen Decl. Ex. E. On the same date, CME's counsel wrote to FMO's counsel and inquired (i) "whether FMO will consent to the turnover of the funds currently attached in [this proceeding] into the escrow account;" (ii) "when FMO intends to deposit the balance of the funds into the escrow account pursuant to the Panel's partial final award, which is now a final, non-appealable judgment of a United States federal district court." *Id.* ¶ 9 & Ex. F. To date, FMO has not responded to CME's email, and the escrow account remains unfunded. *Id.* ¶ 10.[3]

On December 12, 2018, the Court held a pre-motion conference regarding the instant motion. FMO did not attend. This motion followed.

---

[2] CME's petition was filed in Florida as the seat of the TSMC Arbitration is in Miami.

[3] Following correspondence between and among CME, FMO, the arbitration panel, and the escrow agent (Signature Bank), the administrative details of the account were finalized, including the establishment of the escrow account at Signature Bank in New York. *See* Paulsen Decl. ¶ 10 n.1.

## ARGUMENT

I. **The Account Is Subject To A Turnover Order Pursuant To The Florida Judgment**

A motion to enforce a money judgment[4] is governed by Rule 69(a) of the Federal Rules of Civil Procedure, which provides that "proceedings supplementary to and in aid of judgment or execution . . . must accord with the procedure of the state where the court is located." Fed. R. Civ. P. 69(a). Under New York law, a judgment creditor may commence a "special proceeding" against a third party who "is in possession or custody of money or other personal property in which the debtor has an interest" seeking a turnover of the judgment debtor's assets. N.Y. CPLR 5225(b). Although the New York statute refers to a "special proceeding," the Second Circuit has held that "a party seeking a money judgment against a non-party garnishee may proceed by motion and need not commence a special proceeding, as long as the court has personal jurisdiction over the garnishee." *See CSX Transp., Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 469 (2d Cir. 2018).[5]

Section 5225(b) requires "a two-part showing before the Court can order the third party to turn over the money to the judgment creditor." *Hoenlein v. Kaplan*, 2005 N.Y. Misc. LEXIS 3508, at *10-11 (Sup. Ct. N.Y. Cty. Oct. 31, 2005). First, the judgment creditor must show that "the judgment debtor has an interest in the property that the creditor is trying to reach." *Id.* at *11. Second, the Court must "find either that the judgment debtor is entitled to the

---

[4] For the avoidance of doubt, the Florida Judgment is a "money judgment," as it is "a judgment . . . directing the payment of a sum of money." N.Y. CPLR 105(q).

[5] In this case, FMO's account is held in New York by third-party garnishee Bank of America. Simultaneously with the filing of this motion, CME served a copy of the motion papers on Bank of America's counsel, who has agreed to accept service.

5

possession of such property, or that the judgment creditor's rights to the property are superior to those of the party who controls or possesses that property." *Id.* at *12.

CME easily satisfies the two-part test. First, FMO – the judgment debtor pursuant to the Florida Judgment – has an interest in the property CME is trying to reach: the Account. The Account necessarily belongs to FMO as evidenced by the fact that the funds were attached after the garnishee was served with the order of attachment. And New York courts have frequently found that bank accounts belonging to a judgment debtor are properly the subject of a turnover order. *See, e.g., Matter of Signature Bank, N.A. v. HSBC Bank USA, N.A.*, 67 A.D.3d 917, 918-19 (2d Dep't 2009); *State v. Lincoln Sav. Bank*, 210 A.D.2d 489, 490 (2d Dep't 1994).

Second, as the owner of the Account, FMO "is entitled to the possession" of the funds therein or, alternatively, CME, as the judgment creditor, holds rights to the funds that are "superior to those of the party who controls or possesses that property." *Kaplan*, 2005 N.Y. Misc. LEXIS 3508 at *12.[6] Under these circumstances, there can be no dispute that the Account is properly the subject of a turnover order pursuant to the Florida Judgment, and CME's motion should be summarily granted. *See HBE Leasing Corp. v. Frank*, 48 F.3d 623, 633 (2d Cir. 1995) (absent disputed issues of fact, a court "may grant summary relief" in a turnover proceeding).

## II. A Turnover Order Is Consistent With The FSIA

Given this Court's prior conclusion that FMO "is an agency or instrumentality of a foreign state," ECF No. 83, CME must also establish that (i) the Account is not immune from pre-judgment attachment, and (ii) a "reasonable amount of time" has elapsed since FMO received notice of the Florida Judgment pursuant to 28 U.S.C. § 1610(c). As discussed further

---

[6] If FMO, the garnishee, or any third party claims otherwise, CME will address any competing claims in its reply. For present purposes, CME is unaware of any competing claims to the funds in the Account.

6

below, there are three separate and independent bases to attach FMO's property under the FSIA. Also, as FMO has failed to pay any amount of the Florida Judgment since its entry in July 2018, CME satisfies the "reasonable amount of time" requirement of section 1610(c).

### A. The Account Is Subject To Attachment Pursuant To 28 U.S.C. § 1610(d)

As set forth in CME's letter dated October 18, 2016 – to which FMO never responded – FMO's New York bank account is not immune from pre-judgment attachment pursuant to 28 U.S.C. § 1610(d). *See* ECF No. 84. Section 1610(d) permits the prejudgment attachment of the property of a foreign state where, as here, (1) the property is used for commercial activity in the U.S., (2) the foreign state explicitly has waived its immunity from prejudgment attachment, and (3) the purpose of the attachment is to secure satisfaction of a judgment that has been or may ultimately be entered against the foreign state, and not to obtain jurisdiction.

#### 1. The Account Is Located In The U.S. And Used By FMO For Commercial Activity

The FSIA defines "commercial activity" as "a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603. The statute further provides that "[t]he commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." *Id.* As stated by the Second Circuit, the relevant inquiry is "whether the particular actions that the foreign state performs (whatever the motive behind them) are the *type* of actions by which a private party engages in trade and traffic or commerce." *NML Capital, Ltd. v. Republic of Argentina*, 680 F.3d 254, 258 (2d Cir. 2010) (internal quotation marks and citations omitted) (emphasis in original).

7

In this regard, a foreign state's bank account in the U.S. may be subject to prejudgment attachment when that account is used for commercial conduct of the type in which private parties may engage. For example, *NML Capital* involved the prejudgment attachment of a New York account owned by Argentina's Ministry of Science, Technology, and Productive Innovation ("ANPCT"). *NML Capital*, 680 F.3d at 256. The seized account was used by the ANPCT to purchase scientific equipment for use by grant beneficiaries. *Id.* Although Argentina argued that ANPCT's purchase of scientific equipment was made to "implement a national program of scientific research and development," the Second Circuit affirmed the district court's attachment order, finding that the purchase of scientific equipment undoubtedly was a commercial act. *Id.* In so doing, the court noted that the governmental purpose of a commercial activity is irrelevant. *Id.* at 259 ("[T]he relevant inquiry concerns the power that is exercised, rather than the motive for its exercise"). As such, the court found that the "commercial use" requirement of section 1610 was satisfied. *Id.* at 260; *compare EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 466 (2d Cir. 2007) ("commercial use" requirement not satisfied where attached account was Argentina's central bank's account at the Federal Reserve Bank of New York and the funds were restricted by the foreign state's law and could only be used for governmental purpose).

Here, as in *NML Capital*, FMO used the Account to conduct commercial transactions akin to those in which private parties may engage. Indeed, as set forth in previously-filed Declaration of Michael J. Frevola dated October 18, 2016 and the exhibits thereto (ECF No. 84-1),[7] FMO used the Account to pay for goods, equipment, and services

---

[7] The Frevola Declaration and its exhibits contain information received from garnishee Bank of America pursuant to a protective order. Thus, it was filed under seal.

related to the mining of iron ore. Many of those payments were directed to commercial vendors in the United States. Transactions of this sort – the purchasing of goods and services in the U.S. to support industrial activities – are clearly the types of activities in which private parties can (and do) engage. The Account therefore satisfies the first prong of section 1610(d).

### 2. FMO Waived Immunity From Prejudgment Attachment In The TSMC

CME has also established that FMO explicitly waived its immunity from prejudgment attachment under section 1610(d)(1) in its underlying contracts with CME. While "the asserted waiver must demonstrate unambiguously the foreign state's intention to waive its immunity . . . [s]ection 1610(d) does not require recitation of 'the precise words "prejudgment attachment" in order to waive immunity.'" *Banco de Seguros del Estado v. Mut. Marine Office, Inc.*, 344 F.3d 255, 261 (2d Cir. 2003) (quoting *S & S Mach. Co. v. Masinexportimport*, 706 F.2d 411, 416 (2d Cir. 1983)).

In *Banco de Seguros*, the Second Circuit held that a foreign state's agreement to pre-arrange security as a contractual undertaking constituted an explicit waiver of attachment immunity. Banco, a reinsurance corporation wholly owned by the Government of Uruguay, was a party to Umbrella Agreements with the claimants. 344 F.3d at 258. The Umbrella Agreements were reinsurance contracts that included arbitration agreements. *Id.* Under the Umbrella Agreements, Banco was also obligated to "apply for and secure delivery to [claimants] a clean irrevocable Letter of Credit." *Id.* After a dispute arose between Banco and the claimants, the claimants commenced arbitration, and the arbitration panel issued pre-hearing orders requiring Banco to post security for the claimants' claims. *Id.* Banco moved to vacate the security awards

9

in this District, arguing that its assets were immune from prejudgment attachment. *Id.* Both District Judges (Judge Scheindlin and Judge Pauley) confirmed the security awards.

On appeal, the Second Circuit raised doubt as to whether the FSIA even applied to arbitration proceedings, but did not reach that question. Rather, it held that if the FSIA did apply, Banco had explicitly waived its immunity from prejudgment attachment. *Id.* Specifically, the Second Circuit held that Banco's contractual agreement to open a letter of credit as security for claimants' claims "inarguably demonstrates that the parties embraced 'the usefulness of letters of credit as the means of securing their respective rights and obligations and as a means of facilitating the transaction generally.'" *Id.* at 262 (quoting *Yasuda Fire & Marine Ins. Co. v. Cont'l Cas. Co.*, 37 F.3d 345, 350 (7th Cir. 1994)). As such, the court found that the Umbrella Agreements satisfied the explicit waiver requirement of section 1610(d)(l). *Id.*

Here, FMO has similarly waived its immunity from prejudgment attachment in entering into the TSMC with CME. Under the TSMC, FMO was obligated to pay CME monthly throughput payments for a minimum of 500,000 tonnes of iron ore per month at a designated rate per tonne, which throughput payments amounted to at least $3.5 million per month. Paulsen Decl. Ex. A (TSMC), Cls. 11-14. FMO agreed to pay CME this monthly throughput payment "without deduction or offset." *Id.* In clause 17, FMO also agreed to establish an escrow account in the amount of $3.5 million "*to serve as security* to cover the compensation equivalent to the monthly minimum guaranteed tonnage of 500,000 metric tonnes [of iron ore]." *Id.*, Cl. 17 (emphasis added). FMO further agreed that, should it fail to pay CME the monthly throughput rate, CME could draw down from the escrow account to receive its monthly throughput payment. *Id.* In such case, FMO's failure to replenish the escrow account to the full amount of $3.5 million would be considered a breach of the TSMC. *Id.* In other words, pursuant to Clause 17 of the

10

TSMC, FMO agreed to establish an escrow account to serve as *continuous security* for the minimum monthly throughput payments it owed to CME under the TSMC, and FMO agreed to continuously replenish that escrow account in the event CME had to draw down on the escrow account due to FMO's failure to pay CME the minimum monthly throughput rate.

Similar to the letters of credit in *Banco de Seguros*, FMO's agreement in the TSMC to establish an escrow account to secure CME's respective rights under that contract served as an explicit waiver of FMO's attachment immunity. *Banco de Seguros*, 344 F.3d at 262. Notably, the TSMC Arbitration arises, in part, out of FMO's failure to pay the monthly throughput rate, and the amount of CME's throughput claims in the TSMC Arbitration (plus interest) are precisely the amount awarded in the Partial Final Award. *See* Paulsen Decl. Ex. B ¶ 72. Accordingly, FMO has explicitly waived its immunity from prejudgment attachment.

### 3. The Purpose Of The Attachment Is To Secure CME's Eventual Judgment

CME has also established that the purpose of the attachment is to secure satisfaction of a judgment that has been or may ultimately be entered against FMO, and not to obtain jurisdiction. 28 U.S.C. § 1610(d)(2).

Rule B attachments serve a dual purpose: (1) to obtain jurisdiction over the defendant through its property, and (2) to obtain security for the plaintiff's maritime claims. *See, e.g., Swift & Co. Packers v. Compania Columbiana del Caribe, S.A.*, 339 U.S. 684, 693 (1950); *see also Venus Lines Agency v. CVG Indus. Venezolana de Aluminio, CA*, 210 F.3d 1309, 1312 (11th Cir. 2000) (citing *Seawind Compania, S.A. v. Crescent Line, Inc.*, 320 F.2d 580, 582 (2d Cir 1963)). And while the dual purposes of Rule B cannot be separated (because security cannot be obtained except as an adjunct to obtaining jurisdiction), for the purposes of Section 1610(d)

11

"so long as the *purpose* of the prejudgment attachment is to obtain security and not jurisdiction, it is irrelevant that an *effect* of the attachment is to obtain jurisdiction." *Venus Lines*, 210 F.3d at 1312 (citing *Nehring v. S.S. M/V POINT VAIL*, 901 F.2d 1044, 1051 (11th Cir. 1990)) (emphasis in original).

In its verified complaint, CME sought an order of maritime attachment pursuant to Rule B in order to obtain security for a number of maritime claims against FMO that are subject to arbitration, ECF No. 1, ¶¶ 87-94, and CME demanded a judgment in the form of a writ of maritime attachment be issued against FMO's property within the district in an amount sufficient to secure CME's claims. *Id.*, Prayer for Relief, ¶ 1. Furthermore, in CME's memorandum of law in support of its Rule B application, CME explained that it was seeking "security in aid of its claims to be brought against FMO in [multiple] arbitrations." ECF No. 8 at 5. At no point during this proceeding has CME suggested that its purpose for requesting the Rule B attachment was to obtain *in personam* jurisdiction over FMO in order to pursue its maritime claims against FMO in this Court. Rather, CME made clear in the verified complaint that all of its claims against FMO are subject to arbitration, ECF No. 1 ¶¶ 87-89, and CME requested that this Court retain jurisdiction over this matter only through the entry of any judgment associated with the recognition and confirmation of any arbitration awards rendered against FMO on CME's claims. *Id.*, Prayer for Relief, ¶¶ 4-5.

Here, as in *Venus Lines*, it is clear that CME's primary purpose for the Rule B attachment was to secure any arbitration award that it may obtain against FMO, and not to obtain *in personam* jurisdiction over FMO by attaching the Account. Thus, the final condition to establish an exception to immunity under section 1610(d) has been satisfied.

B. **The Account Is Subject To Attachment Pursuant To 28 U.S.C. § 1610(a)(6)**

In addition to FMO's explicit waiver under section 1610(d), its property is also subject to attachment as a result of the Florida Judgment, confirming the Partial Final Award. Pursuant to 28 U.S.C. § 1610(a)(6), the property of a foreign state used for a commercial activity in the United States[8] shall not be immune from attachment in aid or execution upon a judgment entered by a court of the United States if "the judgment is based on an order confirming an arbitral award rendered against the foreign state." 28 U.S.C. § 1610(a)(6). Thus, whatever hurdles may have previously existed to attaching FMO's assets in the United States (there were none), they were eliminated upon entry of the Florida Judgment. *See, e.g., Solgas Energy Ltd. v. Fed. Gov. Nig.*, 2010 U.S. Dist. LEXIS 72326, at *5-6 (S.D. Tex. July 19, 2010) (noting that "property in the United States belonging to the [foreign sovereign] that is used for commercial activities in the United States is subject to attachment in aid of execution on the judgment entered by the United States District Court for the District of Columbia based on the order confirming the international arbitral award"); *see also Libancell S.A.L. v. The Republic of Lebanon*, 2006 U.S. Dist. LEXIS 29442, at *16 (S.D.N.Y. May 16, 2006) ("Should Libancell ultimately succeed on [its petition to recognize and enforce the arbitration award,] the foreign award will be reduced to a domestic judgment and Libancell may seek to attach Lebanon's commercial assets under section 1610(a)(6).").

---

[8] As noted *supra* at section II.A.1, FMO's property is used for commercial activity in the United States.

### C. FMO Also Waived Immunity In Moving To Vacate The Partial Final Award

As noted above, FMO explicitly waived immunity by entering into the TSMC long before the Florida Judgment was entered. But FMO's attempt to vacate the Partial Final Award provides yet another basis for this Court to find a waiver of immunity.

Article VI of the New York Convention states, "[i]f an application for the setting aside or suspension of the award has been made to a competent authority . . . the authority before which the award is sought to be relied upon may . . . on the application of the party claiming enforcement of the award, *order the party to give suitable security*." 9 U.S.C. § 201, art. VI (emphasis added). Thus, Article VI expressly permits courts to impose security requirements on parties seeking to set aside an award. *See Int'l Ins. Co. v. Caja Nacional De Ahorro Y Seguro*, 293 F.3d 392, 399-400 (7th Cir. 2002). Venezuela is a signatory to the New York Convention and, as such, FMO's motion to vacate the Partial Final Award constituted an express waiver of any immunity from pre-judgment attachment. *See id.*; *see also Libancell S.A.L.*, 2006 U.S. Dist. LEXIS 29442, at *12.

### D. A "Reasonable Amount Of Time Has Elapsed" Since FMO Received Notice Of The Florida Judgment

Under 28 U.S.C. § 1610(c), a judgment debtor may not seek to attach the property of a foreign state located in the United States "until the court has . . . determined that a reasonable period of time has elapsed following the entry of judgment and the giving of any notice required under section 1608(e) of this chapter." 28 U.S.C. § 1610(c). FMO cannot dispute that it received notice of the Florida Judgment when it was entered on July 18, 2018, as it appeared in the action and in fact filed an appeal of the Florida court's decision. *Cf. Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, 2017 U.S. Dist. LEXIS 221611, at *2 (D.D.C. June

14

9, 2017) ("Respondent does not dispute that it has received the required notice, and has in fact appealed the judgment."). Thus, the sole remaining question is whether a "reasonable amount of time has elapsed" since July 18, 2018, without payment of the underlying judgment.

While the statute does not specify what constitutes a "reasonable amount of time," courts consider "'evidence that the foreign state is actively taking steps to pay the judgment,' the steps necessary to pay the judgment, or evidence of evasion of the judgment." *See id.* at *2 (quoting *Ned Chartering & Trading, Inc. v. Republic of Pakistan*, 130 F. Supp. 2d 64, 67 (D.D.C. 2001)). Here, there is no evidence that FMO has taken *any* steps to pay the judgment, and it failed to even respond to CME's request for a pre-motion conference on these issues or appear at the Court's pre-motion conference on December 12, 2018. The Partial Final Award was entered in January 2017, the Florida Judgment was entered in July 2018 (approximately 150 days ago), and to date, the escrow account remains unfunded. *See* Paulsen Decl. ¶10. This is more than sufficient to satisfy section 1610(c). *See Crystallex*, 2017 U.S. Dist. LEXIS 221611 at *3 (60 days sufficient); Order, *Gold Reserve Inc. v. Bolivarian Republic of Venezuela*, 14-cv-2014 (D.D.C. Jan. 20, 2016), ECF No. 48 (same); *Peterson v. Republic of Iran*, 2013 U.S. Dist. LEXIS 40470, at *137 (S.D.N.Y. Mar. 13, 2013) (100 days sufficient); *Gadsby & Hannah v. Socialist Republic of Romania*, 698 F. Supp. 483, 486 (S.D.N.Y. 1988) (two months sufficient); *Ferrostaal Metals v. S.S. Lash Pacifico*, 652 F. Supp. 420, 423 (S.D.N.Y. 1987) (three months sufficient).

## CONCLUSION

For the foregoing reasons, CME respectfully requests that the Court grant its motion in its entirety and enter an order pursuant to Fed. R. Civ. P. 69 and N.Y. CPLR 5225(b), (i) lifting the stay in this action, and (ii) directing garnishee Bank of America, N.A. to transfer

the funds attached in this action at FMO's New York bank account, into the escrow account established pursuant to the Partial Final Award, as confirmed by the Florida Judgment, and grant Petitioner such other and further relief as the Court deems just and proper.

New York, New York
December 20, 2018

Respectfully submitted,

SEWARD & KISSEL LLP

By: /s Bruce G. Paulsen
    Bruce G. Paulsen
    Brian P. Maloney
    Michael B. Weitman
    Laura E. Miller

One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1200
Fax: (212) 480-8421
paulsen@sewkis.com
maloney@sewkis.com
weitman@sewkis.com
millerl@sewkis.com

*Attorneys for Plaintiff Commodities &
Minerals Enterprise Ltd.*

SK 29735 0001 8113918

16