USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 9/18/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

COMMODITIES & MINERALS
ENTERPRISE LTD.,

            **Plaintiff,**

-against-

CVG FERROMINERA ORINOCO, C.A.,

            **Defendant.**

---

1:16-cv-00861 (ALC)

**OPINION AND ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff, Commodities & Minerals Enterprise Ltd. ("Plaintiff" or "CME") brings this action against Defendant, CVG Ferrominera Orinoco, C.A. ("Defendant" or "FMO") alleging breach of contract. Before the Court is Plaintiff's motion to lift the stay and transfer funds into escrow pursuant to a judgment of a United States District Court. After careful consideration, Plaintiff's motion is hereby **GRANTED**.

## BACKGROUND

CME is a company that sells various commodities and minerals, including iron ore. In 2004, it entered into a series of contracts with FMO, a Venezuelan government-controlled entity that focuses on producing and exporting iron ore. Under the contracts, CME agreed to provide financing, equipment, and services to FMO in relation to FMO's iron ore mining and sales operations in Guyana. CME alleges FMO breached several of these contracts, including two maritime contracts.

On February 4, 2016, CME initiated the underlying action against FMO seeking a prejudgment attachment of FMO's property in this District pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure ("Rule B") and the Federal Arbitration Act. *See* Compl., ECF

1

No. 1. The Court granted CME's request and issued a writ of maritime attachment and garnishment that same day. *See* ECF No. 3. The order was subsequently amended on February 9, 2016. *See* ECF No. 11. [hereinafter "the Order"]. Pursuant to the Order, FMO's bank account with garnishee Bank of America, N.A. ("BANA") was attached.

On June 13, 2016, FMO filed a motion to dismiss CME's verified complaint and/or to vacate the Order, arguing that FMO is an agency or instrumentality of Venezuela and as a result is immune from pre-judgment attachment under the Foreign Sovereign Immunities Act ("FSIA"). *See* ECF No. 38. Subsequently, this Court found FMO is an agency or instrumentality of the Venezuelan government under the FSIA and ordered CME to submit a letter motion addressing whether an exception to the FSIA applies. *See* ECF No. 83. On October 18, 2016, CME submitted its letter motion, arguing FMO is not immune from pre-judgment attachment because all the elements of the exception 28 U.S.C. § 1610(d) under the FSIA are satisfied. *See* ECF No. 84. FMO never replied. Then, on January 16, 2017, CME filed a motion to stay FMO's motion to dismiss the complaint and to vacate the Order because CME had initiated arbitration proceedings against FMO related to the pending motions. *See* ECF No. 86. The Court subsequently granted the stay. *See* ECF No. 95.

On January 5, 2017, CME was awarded a partial judgment ("Partial Final Award") through arbitration; FMO failed to remit the Partial Final Award to CME. Consequently, CME filed a petition in the United States District Court for the Southern District of Florida ("the Florida District Court") to confirm and enforce the Partial Final Award. The Florida District Court affirmed and enforced the Partial Final Award ("the Florida Judgment"). Shortly thereafter, CME registered the Florida Judgment in this District. *See* ECF. No 107. The Court then held a pre-motion conference on December 12, 2018 to discuss CME's anticipated motion

2

to lift the stay and to request that FMO turnover all funds attached by the Court. FMO did not attend this conference. The Court granted CME leave to file its motion to lift the stay and to request the funds from FMO's BANA account be transferred to CME. *See* ECF No. 109. CME filed its motion on December 20, 2018. *See* ECF No. 110. Although FMO's response was due on January 22, 2019, FMO did not file any opposition briefing. This Court ordered FMO to show cause within 7 days as to why CME's motion should not be treated as unopposed. *See* ECF No. 113. FMO then requested an extension until February 19, 2019, which the Court granted. *See* ECF No. 114–16. As of the date of this writing, FMO has not yet responded.

On May 2, 2019, non-party garnishee, BANA filed a letter asking the Court to give the United States an opportunity to submit a Statement of Interest prior to a decision on CME's motion. *See* ECF No. 117. BANA argues that given the Court's previous determination that FMO is an agency or instrumentality of Venezuela, the Venezuela Sanctions may restrict its ability to transfer the funds to CME without approval from the United States. *Id.*

## DISCUSSION

As a preliminary matter, the Court does not find that the concerns raised by non-party garnishee, BANA, regarding the Venezuela Sanctions have any impact on the Court's ability to grant CME's requested relief. As previously mentioned, BANA submitted a letter asking the Court to consider giving the United States an opportunity to submit a Statement of Interest, pursuant to the Venezuela Sanctions. In particular, BANA directed the Court's attention to several executive orders ("E.O.") (collectively referred to as the "Venezuela Sanctions"), which prohibit certain types of transactions between the United States and Venezuela. Even though FMO is an agency or instrumentality of a foreign state, it is not necessary for the United States to submit a Statement of Interest for two primary reasons.

3

First, FMO and its affiliates are not blocked entities. While E.O. 13692 defines Government of Venezuela as any agency or instrumentality of Venezuela, the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") FAQ 505 clarifies that the entire Government of Venezuela is not blocked by the Venezuela Sanctions. *See* OFAC FAQ 505.[1] Rather, it is only those officials contained in the Annex and those contained in the OFAC Specially Designated Nationals and Blocked Persons ("SDN") list. *See generally Office of Foreign Assets Control: Specially Designated Nationals and Blocked Persons List*, U.S. Department of the Treasury (Aug. 6, 2019), https://www.treasury.gov/ofac/downloads/sdnlist.pdf. Here, neither FMO nor its parent company Corporation Siderurgica de Venezuela S.A are listed in the Annex or the SDN list. *See Id.* Similarly, OFAC guidance permits assets of the Government of Venezuela to be attached to satisfy a legal judgment without OFAC authorization. *See* OFAC FAQ 596.[2]

---

[1] FAQ 505 states "[i]f an official of the Government of Venezuela is designated as a Specially Designated National (SDN), does that mean that the Government of Venezuela is blocked? What are the prohibitions on U.S. persons dealing with a designated government official? **No. The designation of an official of the Government of Venezuela does not mean that the government itself is also blocked. The prohibitions apply to transactions or dealings only with the individuals and entities whose property and interests in property are blocked.** However, U.S. persons should be cautious in dealings with the government to ensure that they are not engaged in transactions or dealings, directly or indirectly, with an SDN, for example by entering into contracts that are signed by an SDN, entering into negotiations with an SDN, or by processing transactions, directly or indirectly, on behalf of the SDN, absent authorization or an applicable exemption." *OFAC FAQs: Other Sanctions Programs, Venezuela Sanctions?, FAQ 505*, U.S. Department of the Treasury (July 19, 2018), https://www.treasury.gov/resource-center/faqs/Sanctions/Pages/faq_other.aspx#venezuela. (emphasis added).

[2] FAQ 596 states "[d]oes E.O. 13835 prohibit me from attaching and executing against assets of the Government of Venezuela, including vessels, properties, or financial assets, if I have a legal judgment against the Government of Venezuela? No, provided that the attachment does not involve (i) debt owed to the Government of Venezuela (including accounts receivable) that was pledged as collateral after the effective date of E.O. 13835 (per subsection 1(a)(ii) of the E.O.), or (ii) an equity interest in any entity in which the Government of Venezuela has a 50 percent or greater ownership interest (per subsection 1(a)(iii) of the E.O.). OFAC authorization would likely be required for attachment of equity interest in any entity in which the Government of Venezuela has a 50 percent or greater ownership interest. OFAC would consider license applications seeking to attach and execute against such equity interests on a case-by-case basis." *OFAC FAQs: Other Sanctions Programs, Venezuela Sanctions?, FAQ 596*, U.S. Department of the Treasury (July 19, 2018), https://www.treasury.gov/resource-center/faqs/Sanctions/Pages/faq_other.aspx#venezuela.

Second, the contracts in dispute predate the Venezuela Sanctions. The Venezuela Sanctions make clear that they only apply to transactions that were entered into on or after their date of issue. *See* Exec. Order No. 13692, 80 Fed. Reg. 12,747 (Mar. 8, 2015); Exec. Order No. 13808, 82 Fed. Reg. 41,155 (Aug. 24, 2017); Exec. Order No. 13827, 83 Fed. Reg. 12,469 (Mar. 19, 2018); Exec. Order No. 13835, 83 Fed. Reg. 24,001 (May 21, 2018); Exec. Order No. 13850, 83 Fed. Reg. 55,243 (Nov. 1, 2018); and Exec. Order No. 13857, 84 Fed. Reg. 509 (Jan. 30, 2019). Here, the series of contracts between CME and FMO predate the Venezuela Sanctions by many years. In fact, CME began contracting with FMO in 2004 and entered its last contract with FMO in 2012, but the first E.O. related to the Venezuela sanctions was issued in 2015. Exec. Order No. 13692, 80 Fed. Reg. 12,747 (Mar. 8, 2015). Therefore, the Court finds it unnecessary to give the United States an opportunity to submit a Statement of Interest.

Further, the Court treats Plaintiff's motion as unopposed because the Defendant did not file an opposition by the court ordered deadline, and as of the date of this opinion still has not replied. The Court, however, will review the record as a whole to determine whether there is sufficient support for granting Plaintiff's motion. *See Hernandez v. Goldfarb Properties, Inc.*, No. 13 CIV. 8640, 2017 U.S. Dist. LEXIS 57627, at *4-5 (S.D.N.Y. Apr. 14, 2017); *see also Amaprop Ltd. v. Indiabulls Fin. Servs.*, No. 11 CIV. 2001, 2011 U.S. Dist. LEXIS 102419, at *9 (S.D.N.Y. Sep. 9, 2011).

### I. Motion to Vacate the Stay

It is well established that a "[c]ourt has broad discretion in deciding whether to lift the stay, which arises out of its inherent power 'to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Glenclova Inv. Co. v. Trans-Res., Inc.*, No. 08 CIV. 7140, 2013 U.S. Dist. LEXIS 161858, at *7 (S.D.N.Y. Nov. 12,

2013) (quoting *Landis v. North American Co.*, 299 U.S. 248 (1936)). Further, "[t]he same court that grants a stay . . . may also later 'abandon its imposed stay of litigation if the circumstances that persuaded the court to impose the stay in the first place have changed significantly.'" *Rovi Guides, Inc. v. Comcast Corp.*, No. 16 CIV. 9278, 2018 U.S. Dist. LEXIS 59177, at *4-5 (S.D.N.Y. Apr. 5, 2018) (citations omitted).

The Court granted CME's request to stay the proceedings pending both the resolution of arbitration proceedings between the parties and CME's petition to confirm and enforce the Partial Final Award. The Florida District Court has since confirmed the Partial Final Award. On August 16, 2018, FMO filed an appeal with the Eleventh Circuit, but later withdrew its petition. As such, the Florida Judgment constitutes a final, non-appealable judgment, and CME is entitled to all the rights afforded to a judgment creditor. Therefore, the Court's reasons for granting the stay have been resolved and there are no other reasons for continuing to stay this matter.

## II.     Motion to Transfer Funds

A motion to enforce a money judgment is governed by Federal Rule of Civil Procedure 69(a)(1), which provides that "proceedings supplementary to and in aid of judgment or execution . . . must accord with the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(1). Under New York law, the enforcement of money judgments in which the funds are in possession of non-party third parties is governed by N.Y. C.P.L.R. § 5225(b).[3] In particular, "[t]he Second Circuit has squarely held that a party seeking a turnover of a judgment debtor's

---

[3] Specifically, N.Y. C.P.L.R. § 5225(b) states: "[u]pon a special proceeding commenced by the judgment creditor, against a person in possession or custody of money or other personal property in which the judgment debtor has an interest, or against a person who is a transferee of money or other personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee, the court shall require such person to pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor and, if the amount to be so paid is insufficient to satisfy the judgment, to deliver any other personal property, or so much of it as is of sufficient value to satisfy the judgment, to a designated sheriff." N.Y. C.P.L.R. § 5225(b).

6

assets from a third party under N.Y. C.P.L.R. § 5225(b) may proceed by motion instead of instituting a separate proceeding as long as the court has personal jurisdiction over the garnishee." *Bricklayers Ins. & Welfare Fund v. Lasala*, No. 12-CV-2314, 2019 U.S. Dist. LEXIS 6928, at *4 (E.D.N.Y. Jan. 15, 2019) (quoting *CSX Transp., Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 469 (2d Cir. 2018)) (internal quotations omitted).

N.Y. C.P.L.R. § 5225(b) requires "a two-part showing before the Court can order the third party to turn over the money to the judgment creditor." *Hoenlein v. Kaplan*, 2005 N.Y. Misc. LEXIS 3508, at *10-11 (Sup. Ct. N.Y. Cnty. Oct. 31, 2005); *see also Miller v. City of Ithaca, N.Y.*, No. 3:10-CV-00597, 2019 U.S. Dist. LEXIS 100863, at *3-4 (N.D.N.Y. June 17, 2019) (quoting *Beauvais v. Allegiance Sec., Inc.*, 942 F.2d 838, 840 (2d Cir. 1991)). The first prong requires that the judgment creditor show "the judgment debtor has an interest in the property that the creditor is trying to reach." *Hoenlein*, 2005 N.Y. Misc. LEXIS 3508, at *11. To satisfy the second prong, the Court must "find either that the judgment debtor is entitled to the possession of such property, or that the judgment creditor's rights to the property are superior to those of the party who controls or possesses that property." *Id.* at *12.

The first prong of N.Y. C.P.L.R. 5225(b) is satisfied because the property that CME is trying to reach is FMO's BANA account. *See Universitas Educ., LLC. v. Nova Grp., Inc.*, No. 11 CIV. 1590, 2013 U.S. Dist. LEXIS 165803, at *40 (S.D.N.Y. Nov. 20, 2013). The second prong of N.Y. C.P.L.R. 5225(b) is also satisfied under either part of said prong. The first part of the second prong is satisfied because as the owner of the BANA account, FMO "is entitled to the possession" of the funds within it. *See Miller*, 2019 U.S. Dist. LEXIS 100863, at *3-4. Alternatively, CME's rights to the property are superior to that of FMO. *See Universitas Educ., LLC.*, 2013 U.S. Dist. LEXIS 165803, at *40. This is because CME obtained a valid final

7

judgment against FMO in an amount that exceeds the amount of funds in the BANA account. As of the date of this opinion, FMO has not made any effort to submit payment to CME. This is also evidenced by the fact that the Florida District Court enforced the award and FMO abandoned its appeal objecting to the enforcement. Accordingly, the BANA account is properly the subject of a turnover order pursuant to the Florida Judgment, and CME's motion is **GRANTED.**

### III.   A Turnover Order is Consistent With the FSIA

As previously mentioned, the Florida District Court confirmed and enforced the Partial Final Award. CME then registered the Florida Judgment for enforcement in this Court under 28 U.S.C. § 1963. CME now seeks enforcement of the Florida Judgment by attaching FMO's BANA account pursuant to Federal Rule of Civil Procedure 69(a)(1).

#### a.   The Court has Jurisdiction Over FMO

As a threshold question, the Court addresses whether it has jurisdiction over FMO, given the Court's prior determination that FMO "is an agency or instrumentality of a foreign state."[4] When a party establishes that an exception to sovereign immunity under the FSIA applies in a merits action that results in a federal judgment, that party does not need to establish another exception when it registers the judgment in another district court and seeks enforcement in that court under 28 U.S.C. § 1963. Rather, it is well established that the exception that applied in the merits action "sustain[s] the court's jurisdiction through proceedings to aid collection of a money judgment rendered in the case . . . ." *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 137 (3d Cir. 2019) (quoting *First City, Texas-Houston, N.A. v. Rafidain Bank*, 281 F.3d 48, 53–54 (2d Cir. 2002)). It is undisputed that the Florida District Court had jurisdiction

---

[4] Before the Defendant stopped responding, the parties only disputed whether the Defendant was exempt from pre-judgment attachment under 28 U.S.C. § 1609. Further, the Court terminated Defendant's Motion to Dismiss the Complaint (Dkt No. 1) and Motion to Vacate the Rule B Order of Attachment (Dkt No. 11) on March 31, 2017. *See* ECF No. 83.

over FMO under the New York Convention, 9 U.S.C. § 202 (2018). *See Commodities & Mins. Enter. v. CVG Ferrominera Orinoco,* No. 17-CV-20196, 2018 U.S. Dist. LEXIS 120909, at *10-11 (S.D. Fla. July 18, 2018). As such, the Court finds it also has jurisdiction over FMO for the same reasons. Now, the issue before the Court is whether CME has established that FMO's BANA account is attachable without running afoul of 28 U.S.C. § 1609.

### b. FMO is not Immune From Attachment and Execution Under 28 U.S.C. § 1609 Because CME Satisfied the Exception 28 U.S.C. § 1610(a)(6)

Under 28 U.S.C. § 1609 the property of foreign states are immune from attachment and execution, except as provided in §§ 1610 and 1611. *See* 28 U.S.C. § 1609 ("[s]ubject to existing international agreements to which the United States is a party at the time of enactment of this Act the property in the United States of a foreign state shall be immune from attachment arrest and execution except as provided in sections 1610 and 1611 of this chapter."). The Court only addresses 28 U.S.C § 1610 because 28 U.S.C § 1611 does not apply to this case.

In relevant part, § 1610 provides:

(a) The property in the United States of a foreign state, as defined in section 1603(a) of this chapter, used for a commercial activity in the United States, shall not be immune from attachment in aid of execution, or from execution, upon a judgment entered by a court of the United States or of a State after the effective date of this Act, if— . . .

(6) the judgment is based on an order confirming an arbitral award rendered against the foreign state, provided that attachment in aid of execution, or execution, would not be inconsistent with any provision in the arbitral agreement . . . .

(c) No attachment or execution referred to in subsections (a) and (b) of this section shall be permitted until the court has ordered such attachment and execution after having determined that a reasonable period of time has elapsed following the entry of judgment and the giving of any notice required under section 1608(e) of this chapter.

28 U.S.C § 1610. Plaintiff argues that FMO is precluded from arguing that its property is immune from attachment as a result of the Florida Judgment, confirming the Partial Final Award under 28 U.S.C. § 1610(a)(6). In order to satisfy this exception, CME must first establish that

FMO's property is in the United States. As previously established, FMO is a foreign state pursuant to 28 U.S.C. § 1603(b). Because CME is seeking the attachment of FMO's bank account that is located in New York, Plaintiff has met the first step of the execution. *See* 28 U.S.C. § 1610(a)(6).

The next part of the inquiry requires the Court to find that FMO used its BANA account for "commercial activity" in the United States. Commercial activity is defined as "a regular course of commercial conduct or a particular commercial transaction or act." *See* 28 U.S.C. § 1603(d). Further, "[t]he commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." *Id.* Courts have broad discretion in determining what commercial activity is for purposes of the FSIA. *NML Capital, Ltd. v. Republic of Argentina*, 680 F.3d 254, 257–58 (2d Cir. 2010). However, the Second Circuit has made clear that the relevant inquiry for finding commercial activity is "whether the particular actions that the foreign state performs (whatever the motive behind them) are the type of actions by which a private party engages in trade and traffic or commerce." *Id.* at 258 (citations and internal quotation marks omitted).

CME contends that FMO's BANA account was used for commercial activity in the United States. The Court agrees. FMO used its BANA account to pay for goods, equipment, and services related to its mining of iron ore operation. *See* Pl.'s Br. at 8–9, ECF No. 111. In particular, Plaintiff indicates that FMO made many payments to commercial vendors in the United States. *Id.* The Court finds that these are the types of transactions, in which private parties can engage. *See Republic of Arg. v. Weltover, Inc.*, 504 U.S. 607, 615 (1992) (concluding that Argentina engaged in commercial activity when it issued bonds because "[t]hey may be held by private parties; they are negotiable and may be traded on the international market (except in

Argentina); and they promise a future stream of cash income."); *see also NML Capital, LTD.*, 680 F.3d at 257 (affirming that Argentina's payment from a U.S. bank account to the seller for purchased goods, which were then conveyed directly from the seller to a third party constitutes "commercial activity"). Accordingly, the Court finds that FMO used its BANA account for commercial activity in the United States.

Finally, CME seeks the attachment of FMO's BANA account pursuant to an arbitration award. FMO's funds are subject to attachment and execution if "the judgment is based on an order confirming an arbitral award rendered against the foreign state . . . ." 28 U.S.C. § 1610(a)(6). It is undisputed that the Florida Judgment is based on an order confirming an arbitral award entered against FMO. *See* ECF No. 112, Exhibit E. Therefore, the Court finds that CME has established the requirements of the exception U.S.C. § 1610(a)(6).

### c. A Reasonable Amount of Time has Elapsed Since FMO Received Notice of the Florida Judgment Under 28 U.S.C. § 1610(c)

In addition to finding that the requirements of 1610(a) or (b) are satisfied, a court must determine "that a reasonable period of time has elapsed following the entry of judgment and the giving of any notice required under section 1608(e) of this chapter" before it orders an attachment and execution of a foreign state's property. *See* 28 U.S.C. § 1610(c).

While there is no definitive time period for a finding that "a reasonable period of time has elapsed," the Court finds that a reasonable amount of time has passed since the Florida Judgment was entered. In particular, the Florida District Court confirmed the Partial Final Award and entered the judgment in July 2018, which means over one year has passed as of the date of this opinion. *See Peterson v. Republic of Iran*, 2013 U.S. Dist. LEXIS 40470, at *137 (S.D.N.Y. Mar. 13, 2013) (finding approximately sixth months was sufficient); *Gadsby & Hannah v. Socialist Republic of Romania*, 698 F. Supp. 483, 486 (S.D.N.Y. 1988) (concluding two months was

11

sufficient). Further, the Court finds that FMO received adequate notice of the judgment against it. Indeed, FMO filed an appeal of the Florida Judgment and later withdrew said appeal.

The court does not address Plaintiff's arguments related to 28 U.S.C. § 1610(d) given Plaintiff is no longer seeking a prejudgment attachment; rather CME has already obtained a valid, final judgment against FMO.

## CONCLUSION

For the reasons set forth by the Court, CME's motion pursuant to Fed. R. Civ. P. 69 and N.Y. C.P.L.R. § 5225(b) and to vacate the stay in this action is **GRANTED**.

**SO ORDERED.**

**Dated: September 18, 2019**
   **New York, New York**

ANDREW L. CARTER, JR.
**United States District Judge**